HUBBS v. MARSHALL. (No. 8109.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 20, 1915. On Motions for Rehearing and to Certify, March 27, 1915.)

1. TRIAL ☞365—SPECIAL ISSUES TO JURY—JUDGMENT.

In an action for rescission of a contract of sale of a horse, special findings of a jury, in answer to special questions, that defendant stated that the horse was well broke, double and single, and suitable for a woman to drive, which statement plaintiff relied on, and that he discovered that the horse was not gentle and well broke after several attempts to drive it, and that plaintiff tendered back the horse four weeks after the sale, compels a judgment for plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 871–874; Dec. Dig. ☞365.]

2. SALES ☞404—FRAUD—REMEDIES—RESCISSION—DAMAGES.

One, induced to purchase property by fraudulent representations as to quality, may, by acting promptly after discovery of the fraud, tender back the property and rescind the contract; the purchaser being allowed to recover the price, if paid, with special damages, or he may waive the fraud, keep the property, and sue for his damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1146; Dec. Dig. ☞404.]

3. SALES ☞121—FRAUD—RESCISSION — DELAY IN TENDERING BACK PROPERTY.

Under the rule that, in the absence of any reason why it would be inequitable to grant relief by way of a rescission of the contract, there must be such a delay in asserting the purchaser's rights, or such act in relation to the property after discovering the fraud, as warrants the conclusion that the purchaser intended not to rely on his right of rescission, the fact that the purchaser of a horse, after discovery of the fraud in its sale, attempted to sell or trade the horse, or attempted to use it, would not destroy the right of rescission.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. ☞121.]

On Motion for Rehearing.

4. FRAUD ☞35—DAMAGES — LOSS OF RIGHT TO RESCIND.

While retention and use of a horse, after discovery of the fraud by which the sale was induced, precludes a rescission, it does not prevent a recovery of damages resulting therefrom.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 30; Dec. Dig. ☞35.]

5. SALES ☞404—FRAUD—DAMAGES—WAIVER BY ELECTION.

Where a petition for fraud prays in one count for rescission of a contract of sale, and in another prays damages, the election to stand on the count for rescission, compelled by the court, would not in equity waive the plea of damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1146; Dec. Dig. ☞404.]

Appeal from Tarrant County Court; Chas. T. Prewitt, Judge.

Action by Joe Hubbs against O. L. Mar-

shall. From a judgment for defendant, after a trial de novo on appeal from a justice court, plaintiff appeals. Reversed and rendered. Motion to certify case denied.

A. C. Heath, of Ft. Worth, for appellant. Harris & Young, of Ft. Worth, for appellee.

CONNER, C. J. In the county court, on appeal from a justice court, a trial de novo was had upon appellant's claim that he had been defrauded by appellee in the purchase of a horse. The case was submitted upon special issues, and judgment was rendered for appellee on the answers of the jury given thereto. The issues and verdict are as follows:

"Gentlemen of the Jury: In this cause you are instructed to answer the following questions:

"First question: Did the defendant represent the horse to be well broke, double and single, and suitable for a woman to drive? Answer yes or no.

"Second question: Did plaintiff rely upon the statements as to the horse being gentle and well broke, in buying said horse? Answer yes or no.

"Third question: If you answer the first question in the affirmative, then when did plaintiff first discover that the horse was not as represented, and not gentle and well broke?

"Fourth question: Did plaintiff, at any time before suit was filed, tender back the horse to the defendant and demand the return of his money; and, if so, what date?

"Fifth question: Did plaintiff, or any person with his permission, use or work the horse after he discovered that the horse was not gentle and well broke?

"Sixth question: Did plaintiff offer to sell or trade said horse after he discovered that he was not gentle and well broke? . If you answer 'Yes,' then you will state at about what time he offered to sell or trade said horse.

"Sixth question: No. 2: Did plaintiff use or permit the horse to be used after he tendered the horse back, if you find that he was tendered back?

"Seventh question: Did the defendant knowingly make any false representations to the plaintiff about the horse, which were relied upon by the plaintiff?

"Eighth question: What is the reasonable value of the feed and attention of the horse since the time he was first tendered back, if at all?

"Ninth question: What is the value, if any, of the use of the horse during the above time?

"Tenth question: Did the defendant agree with the plaintiff if the horse was not as represented by the defendant, as being well broke and suitable for a woman to drive, he should bring him back at any time? Answer yes or no.

"You are the exclusive judges of the credibility of the witnesses, and of the weight of the evidence, and of the facts proved."

To these special issues the jury returned their verdict as follows:

"We, the jury, make the following answers to the special issues submitted to us:

"To the first question we answer: Yes.

"No. 2: Yes.

"No. 3: After several attempts to drive the said horse within a period of four or five weeks.

"No. 4: Yes; about four weeks after buying the horse.

"No. 5: Yes.

"No. 6: Yes; about two months after getting horse.

"No. 7: Yes.

---

"No. 8: Five dollars per month from time horse was tendered back to date.

"No. 9: None.

"No. 10: Yes.

"J. S. Fielder, Foreman."

[1] We think the judgment should have been the reverse of that awarded by the court. It is obvious that the special findings establish every material fact necessary to entitle the plaintiff to the rescission sought, unless the answers of the jury to the fifth and sixth special issues establish a waiver of that remedy, and we do not think they do.

[2, 3] There was no exception in the county court to the plea for a rescission, and no objection to any of the evidence offered in its support. The only defense, aside from a denial in both answer and evidence, was, in effect, that the plaintiff's cause of action for rescission had been waived by using the horse and by offering to trade or sell him after discovery of the alleged fraud. As before indicated, there are but two bases for the judgment in appellee's favor. The most substantial, under the evidence, is the finding that the plaintiff offered "to sell or trade" the horse in controversy "after he discovered that he was not gentle and well broke."

It is well established in the authorities that one who has been induced to purchase property by means of fraudulent representations as to its quality may, by acting promptly after the discovery of the fraud, tender a return of the property and rescind the contract of sale altogether, in such cases the purchaser being allowed to recover the purchase price, if already paid, with such special damages, if any, as could have been reasonably contemplated as a result of the fraud; or the purchaser may waive the fraud, keep the property, and sue for his damages. See Wintz v. Morrison, 17 Tex. 373, 67 Am. Dec. 658; Blythe v. Speake, 23 Tex. 429; Aultman v. York, 71 Tex. 261, 9 S. W. 127; Piano Co. v. Nolan, 38 Tex. Civ. App. 395, 85 S. W. 821. But, having once waived the fraud, the purchaser can only pursue his remedy for damages. Hallwood Cash Reg. Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857; Houston Motor Car Co. v. Brashear, 158 S. W. 233. It is not every omission or act of the purchaser in relation to the property, however, that will constitute a waiver. In the absence of any reason why it would be inequitable to grant relief by way of a rescission of the contract, there must be such delay in asserting his right, or such act in relation to the property after the discovery of the fraud, as warrants the conclusion that the purchaser intended not to rely on his right of rescission. In discussing the subject, Mr. Justice Bookhout, in the case of M., K. & T. Ry. Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745, said:

"A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. A waiver, so called, is the result of an intentional relinquishment of a known right. 29 Am. & Eng. Enc. Law (2d Ed.) p. 1091. It has been held that a waiver never occurs unless intended, or where the act relied on ought in equity to estop the party from denying it. The existence of an intent to waive is a question of fact, which may be determined by the language and conduct of the parties."

Must it, then, be said that the affirmative finding of the sixth special issue warrants the judgment against appellant on the issue of rescission? We think not. A mere "offer to sell or trade" the horse in question is not of itself a renouncement of the right to rescind. At most it is but evidence tending to establish the necessary fact, and unaided is altogether too inclusive to afford a proper basis for appellee's judgment. This is the more apparent when we go to the evidence. This shows without dispute that the offer to trade or sell relied upon was after appellant had tendered the horse back to appellee and after appellee's refusal to receive him in return. The evidence is to the effect that, after repeated failures to make the horse work as represented, appellant took the horse to appellee and offered to return him, even at a less price than appellant paid for him; but appellee declined, and said he did not want him at any price. A subsequent sale and disposition of the horse, had there been one, would not amount to the waiver appellee pleads. Such a course might even be required in the exercise of ordinary care to lessen damage to appellee in the way of feed or otherwise. See Edgeworth v. Talerico, 95 S. W. 677. In event of such subsequent sale, of course, the purchaser would be required, in an action to recover the price, to account for any amount actually received for the property so sold. But such considerations are immaterial here, as there has been no final disposition of the horse in question. In brief, when appellant tendered the horse to appellee in return, he then elected to rescind. His right then became fixed, and his subsequent offer or sale did not destroy such right. See Heinze v. Marx, 4 Tex. Civ. App. 599, 23 S. W. 704; Raby v. Sweetzer, 12 Tex. Civ. App. 380, 34 S. W. 779.

What we have already said applies, in part, at least, to the finding in answer to the fifth question. The evidence is clear that the use made of the horse after appellant's discovery of the fraud as found by the jury preceded the offer to return, and amounts to no more than additional trials or extra efforts to induce the horse to work. The efforts were consistent with a desire on appellant's part to make the best of a bad bargain if he could, but by no means were such as to warrant the conclusion that he waived a right to rescind.

We conclude that the special findings of the jury in answer to the fifth and sixth special issues submitted to them are, when standing alone, too inconclusive to support the judgment in appellee's favor; and when considered together with the undisputed evidence they cannot control the effect of the

other findings, which fully support appellant's suit to rescind. The court below should therefore have entered judgment for appellant, rather than appellee; and it is accordingly ordered that the judgment below be reversed, and here rendered for appellant for the recovery of the purchase price paid, with interest thereon at the legal rate, together with the cost of feed and attention, as found by the jury to the eighth question.

### On Motion for Rehearing.

We have examined the decisions cited in behalf of appellee in the motion for rehearing and think they are distinguishable from the case before us, and yet believe, under the circumstances of this case, that we reached the proper conclusion on the original hearing. Moreover, we think substantial justice was reached by our original conclusion.

[4, 5] It is clear from the findings and from the undisputed testimony that appellant, if not entitled to a rescission, was at least entitled to damages, which equals the amount of the judgment awarded by us. If so, the judgment was right (Cash Register Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 85), unless possibly it should be said that appellee waived his plea for damages by an election at the trial to rely upon the count in his petition praying for a rescission. But in equity this conclusion can scarcely be justified, it appearing that the election was compelled by the trial court.

The motion for rehearing will accordingly be overruled.

### On Motion to Certify.

We are of the opinion that, as applied to the findings and circumstances in this case, there is no real conflict in our conclusions herein with the cases cited to that end in behalf of appellee, and hence, our judgment being final, we think the motion to certify must be overruled. See Cole v. State (Sup.) 170 S. W. 1036.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes