**C. V. HILL & CO., Inc., v. FRICKE.**

No. 13999.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 15, 1939.

Rehearing Denied Jan. 19, 1940.

Webb, Bransford & Matthews, of Fort Worth, for appellant.

G. G. Tunstill and Richard Owens, both of Fort Worth, for appellee.

SPEER, Justice.

Plaintiff, Eric C. Fricke, sued defendant, C. V. Hill & Co., a private foreign corporation, with permit to do business in Texas, for rescission of an oral contract, whereby he purchased from defendant a refrigerated show case and other equipment in connection therewith.

Plaintiff's action was based on fraudulent representations made by defendant, acting through its agent and salesman, H. A. Padgett. He alleged that he was engaged in the butcher business in Fort Worth, Texas, where he kept on hand fresh meats for sale to the retail trade for human consumption. He knew nothing about the merits of the show case which defendant proposed to sell him, and relied upon the representations of the agent who displayed a large catalogue colored picture and described its merits. He alleged that defendant, through its agent, represented that the show case was "mechanically perfect, was the best new show case made and would keep the plaintiff's meats chilled and would maintain such a low temperature as to prevent the spoiling thereof." That it was further represented by said agent that said show case would not sweat and was in every way suitable

for the requirements of plaintiff's business in the storage and display of meats for human consumption. It is alleged that relying upon said representations he purchased the show case, agreeing to pay $1,395 for it. That the amount was to be paid by a sale by him of two used show cases then in the store, at an agreed price of $610, and executing a series of twenty-four notes for the remainder. That at the same time plaintiff executed to defendant his chattel mortgage lien on the new show case, to secure the instalment notes.

Allegations were made that the new show case was not mechanically perfect, claiming that the electric current extended to the metal show case and shocked those who touched it; the electric light inside would not burn; the sweat accumulated in the case and water dripped into the pans, saturating the meats stored therein, causing it to spoil, resulting in the loss of the meat; that the temperature maintained was inadequate to preserve the meats; that the value of meats lost by plaintiff because of the defective show case was greater than the value of its use during the time he retained it in his store; that the equipment was wholly worthless to him for the purposes for which it was sold by defendant and purchased by him.

Frequent complaints were made by plaintiff to the agent during the time between its date of installation and when it was taken out. The agents and a factory representative tried many times to correct the alleged defects, but failed. Whereupon he notified defendant he would not retain the equipment, but had rescinded the contract. Prayer was for rescission of the contract, cancellation of the notes and for $610, alleged to be the agreed value of the two show cases delivered by plaintiff in part payment for the new one. There is what plaintiff calls an alternative prayer for damages in the value of the two show cases and the cancellation of his notes.

Defendant answered by general demurrer and many special exceptions, all of which were overruled by the court, a general denial, special pleas denying the agency of Padgett, and that he had any authority to make oral representations concerning the equipment, but that it issued to plaintiff a written warranty which did not cover the matters complained of by plaintiff. That such purchase as plaintiff made was from Padgett and not from defendant and that plaintiff inspected the show case and relied upon his own knowledge in such matters and not upon oral representations made by Padgett. That plaintiff accepted the equipment on March 28th, 1938, retained and used it until August 18th, 1938, thereby waiving any breach of warranty thereon and was now estopped to plead the same.

Defendant filed a cross action against plaintiff, alleging the series of notes and chattel mortgage lien; it was shown that by the terms of the chattel mortgage, defendant repossessed the fixtures and sold them out for $550 and credited the amount on the debt, and prayed for judgment in the sum of $378.69, the remaining amount unpaid. The pleadings are lengthy but we believe enough has been said about them to enable us to discuss this appeal.

A jury trial was had upon special issues. The answers were favorable to plaintiff. The court overruled the motion of defendant for judgment non obstante veredicto, and entered judgment for plaintiff cancelling and rescinding the contract of purchase, the notes and chattel mortgage executed by plaintiff, and for judgment for $503 the amount found by the jury to have been the agreed value of the two second hand show cases delivered by plaintiff to defendant as part payment on the new fixtures. Judgment was entered against defendant in its cross action.

Motion for new trial was overruled and defendant has appealed.

Defendant's first two propositions challenge the action of the court in overruling its general demurrer to plaintiff's petition. It is argued that the allegations which relate to representations made by Padgett, the sales agent, did not constitute actionable fraud. Counsel quotes well recognized rules in support of the contention, such as: "To be actionable a false representation must be the affirmation of a fact as distinguished from mere expressions of opinion, intention or promise." Citing 20 Tex. Jur. page 23, sect. 11. Likewise, counsel urges as a controlling rule in the instant case, the principles announced by the courts relating to dealer's and seller's talk, or "puffing" of one's property by a salesman.

It is insisted by defendant in its brief that the general demurrer should have been sustained because an improper measure of damages was plead by plaintiff. It is contended that since the deal between the parties here was one of exchange of property, the proper measure of damages would

necessarily be the difference between the reasonable cash market value of the property given in exchange for that received, or the amount the purchaser obligated himself to pay for such article. Many authorities are cited in support of the proposition. In cases which involve that question the proposition is sound, but we shall presently show that is not the case before us.

This is not a case in which it is sought to recover damages for breach of warranty in a contract, nor is it one to recover damages for fraudulent representations growing out of the exchange of property. The rules applicable in such cases do not control the rights of the parties here.

As disclosed by our statement of the nature of plaintiff's petition, this suit was instituted to rescind a contract of purchase of a refrigerated show case for which plaintiff had agreed to pay $1,395, to recover the down payment alleged to have been $610, by the delivery of two second hand cases, and to cancel the notes and mortgage executed for the remainder of the purchase price. The grounds alleged were, in effect, that defendant, acting through its sales agent, had presented to plaintiff a picture of the fixtures and represented that it was mechanically perfect, would maintain a temperature sufficient to preserve meats to be sold for human consumption, would not sweat, and in every way was suitable for the purposes plaintiff desired to use it; that plaintiff was not familiar with the fixture contracted for; that he relied upon the representations of the salesman and but for which he would not have made the purchase; that the representations were false and that the equipment was wholly worthless to him for the uses intended when the sale was made.

■■■ If Padgett had a legal right to sell the equipment for defendant to plaintiff, he had the right to bind defendant for representations made concerning it, which induced the plaintiff to buy. It is, we think, fundamentally true that if plaintiff was defrauded into making the purchase by false and fraudulent representations made by defendant or its agent, he would have a right to rescind, if seasonably exercised. Henderson v. Railroad Company, 17 Tex. 560; C. Aultman & Co. v. York, 71 Tex. 261, 9 S.W. 127; Jesse French Piano & Organ Co. v. Costley, Tex.Civ.App., 116 S.W. 135; Johnson County Savings Bank v. Renfro, 57 Tex.Civ.App. 160, 122 S.W. 37.

In Way v. Siddall, Tex.Civ.App., 299 S.W. 313, writ refused, a very similar situation to the one here was involved. There, plaintiff sued to rescind a contract of purchase of a refrigeration machine, and alleged that the seller had made certain representations as to the capacity of the machine; that plaintiff was ignorant concerning such things and relied upon the representations of the seller; that they were false, and that the machine was worthless to plaintiff in his business. Such allegations were held to state a cause of action.

■■■ As applicable to defendant's contention that the court erred in overruling its general demurrer to plaintiff's petition because it alleged an improper measure of damages, we think the proposition unsound in such cases as this. While it is true that the pleadings disclose part payment was made on the new show case by a sale to defendant of two second hand cases, yet the price at which the latter were taken was agreed upon between the parties, and is equivalent to a payment in cash or other property to that extent and takes the transaction out of the rule governing exchange of property. In an action for rescission and cancellation of instruments, where the price at which other property is taken in on a deal is agreed upon at the time of the transaction, as in this case, no necessity exists for allegations of any other measure of damages than that of the price agreed upon. 55 C.J. page 41, sect. 8; Alamo Automobile Co. v. Schmidt, Tex.Civ.App., 211 S.W. 804, writ refused. The petition was sufficient to state a cause of action and there was no error in overruling the general demurrer.

The third proposition and the assignment of error upon which it is based, complain of the first special issue, upon the ground that it was multifarious. The special issue reads: "Do you find from a preponderance of the evidence that on or about March 28th, 1938, the defendant, acting through H. A. Padgett, represented to the plaintiff, Eric C. Fricke, that the counter manufactured by defendant was mechanically perfect and would keep plaintiff's meats chilled and maintain such a low temperature as to prevent spoiling?" The answer was "Yes".

■■■ The contention is made that the inquiry covers: (a) did the salesman represent that the counter was mechanically per-

fect; (b) did he represent that the counter would keep plaintiff's meats chilled; and (c) did he represent that the equipment would maintain such a low temperature as to prevent plaintiff's meats from spoiling. We think this assignment is well taken. As we have seen, this action was to rescind a sale contract because of fraudulent representations which were believed by plaintiff and induced him to make the deal. The issue as propounded was required by the court to be answered yes or no. It embraced at least three alleged fraudulent statements which constituted substantially all of the grounds relied upon by plaintiff. It gave the jury no opportunity to answer whether or not each was made. Certainly if all the alleged representations were made the issue could have been answered in the affirmative, but if it was found that either was not made then the whole issue would have to be answered in the negative. This would appear to be most favorable to the defendant, who is here complaining. However, the manner in which this issue was submitted is not in keeping with the letter or the spirit of Article 2189, R.C.S. Among other things, that article provides that issues shall be submitted distinctly and separately. We do not consider that the nature of the special issue is such as to bring it within the class where it requires a grouping of facts to present a single or ultimate issue as announced in Speer's Special Issues, page 128, sect. 94. It has been held by our courts that the article of the statute referred to should be liberally construed so as to enable the losing party to know with certainty the facts found by the jury which constitute the basis for the judgment entered against him. Gulf States Utilities Co. v. Wooldridge, Tex.Civ.App., 90 S.W.2d 325.

In Theobalt v. Wiemann, Tex.Civ.App., 104 S.W.2d 589, 590, plaintiff sued to rescind a contract of purchase of an automobile and to cancel certain notes given in the deal. It was alleged that a number of false and fraudulent statements were made by the seller which induced the sale. The following special issue was propounded to the jury and complained of by the defendant under the assertion that it was multifarious: "Do you find from a preponderance of the evidence that material false representations were made to the plaintiff, Carroll Wiemann, about the condition of the Terraplane automobile prior to the sale thereof." The jury was instructed to answer, "yes" or "no". The charge was

condemned and the court reasoned: "The issue covered the whole cause of action asserted on the basis of fraud, and required the jury to answer them all in one word, 'yes' or 'no'. This placed the jury where it could not find that part of the representations were false, and part true." The court cites Meinecke v. Fidelity Inv. Co., Tex. Civ.App., 62 S.W.2d 623, writ refused; and Brammer & Wilder v. Limestone County, Tex.Civ.App., 24 S.W.2d 99, writ dismissed. The opinion from which we have quoted further adds: "Again, the issue was multifarious. It contained the issues of whether the car had ever been wrecked; whether it was in good condition and would perform as an unused car; whether it had ever been used for other than demonstrator purposes. These issues should have been submitted separately. Brammer & Wilder, [supra]; Metropolitan Life Ins. Co. v. Greene, (Tex.Civ.App.) 75 S.W.(2d) 703; Missouri K. & T. Ry. Co. v. Long (Tex. Com.App.) 299 S.W. 854 [and 20 Tex.Jur. sect. 126, pp. 179–181]." The assignment raising the question must be sustained.

Defendant's fourth proposition is to the effect that no judgment in this case could be properly rendered against it under the pleadings and evidence until a jury finding was had on the question of whether or not Padgett, upon whose representations plaintiff relied, was its agent. In the brief defendant says the proposition is germane to its 4th, 5th and 6th assignments of error. By reference to the assignments mentioned, we find that no such complaint is made of the action of the trial court in either. By the fourth assignment it is urged that the court erred in entering judgment against defendant because, if any representations were made about the show case, they were made by Padgett, and were mere sales talk. The fifth and sixth assignments simply claim that it was error to enter the judgment against defendant under the pleadings and testimony offered. The assignments as such were not such as we could consider since they do not distinctly point out the actions of the court complained of. Vernon's Texas Civil Statutes, Article 1844.

If the proposition contained in the brief could be considered as an assignment of error (although not presented or treated as such by defendant), then, as worded, it would fall short of the rule for the reasons mentioned concerning the assignments to which it is claimed to be germane. No ac-

tion or ruling of the court is complained of, but simply asserts that, as a matter of law, plaintiff was not entitled to recover until he had alleged, proved and procured a jury finding that Padgett was the agent of defendant.

In view of the fact that this case must be tried again, doubtless much of the testimony will be the same as it was upon the previous trial. Aside from the written order for the equipment, the question of agency of Padgett depends largely upon the testimony of plaintiff. We do not believe that the order adds much to plaintiff's contention of agency. It shows to be addressed to defendant at its home office; that merchandise was sold to plaintiff and that Padgett was the salesman; yet the instrument requests shipment to Padgett at Fort Worth, Texas. Padgett testified, and in this he is uncontradicted, that he bought from defendant and sold its merchandise on commission; that when goods were consigned to him, he was required to pay defendant a stipulated price when they were sold and such sum as he received above the price at which it was charged to him, was his commission for making the sale. Whether or not the relationship between defendant and Padgett was one of principal and agent must be determined from all the facts and circumstances in evidence. It is often difficult for one dealing with a purported agent to make clear and concise proof of that relation. Where, as in this case, the principal does not testify, a great deal of leniency is indulged in favor of the sufficiency of the evidence offered by a plaintiff dealing with one claimed to be the agent of another. This court discussed that point in the recent case of Dallas Joint Stock Land Bank of Dallas v. M. E. Harrison et al., Tex.Civ. App., 135 S.W.2d 573, opinion written by Chief Justice Dunklin. We also cite 2 Tex. Jur. p. 388, sect. 8, as bearing upon the distinction between agency and that of those receiving goods on consignment to be sold.

If it should appear upon another trial that there is any substantial testimony offered by defendant tending to show a lack of agency in Padgett, then it becomes an issue of fact for determination by the jury, and should be submitted, placing the burden upon the plaintiff. 2 Tex.Jur. sect. 103, p. 499, et seq. See, also, Williamson v. Patterson, Tex.Civ.App., 106 S.W.2d 753.

It is insisted by the fifth proposition that from the length of time plaintiff retained the fixtures after learning of their alleged defects, he was guilty of laches and was estopped as a matter of law to sue for a rescission of the contract. The facts and circumstances surrounding the whole transaction were before the jury and under proper issues they were determined against the contention made. We do not consider that as matter of law he was estopped, and the point is overruled.

It is complained in the sixth proposition that the value of the second hand show cases traded in on the new one was inflated for purposes of the trade, and should not have been made the criterion for the amount of recovery by plaintiff.

By its seventh proposition, defendant asserts that if plaintiff should be permitted to recover at all the measure of his damages was the difference between the value of what he received and the reasonable cash market value of what he gave. The jury found in response to the sixth special issue that the parties agreed at the time of the sale that the second hand show cases were worth $503. We have discusssed these two points under the assignments complaining of the court's action in overruling the general demurrer. The authorities there cited are against defendant's contention; they hold that where the parties agree upon a value, as they did in this case, they are bound by it. Both propositions must be overruled.

This suit was instituted to rescind the contract of purchase and to cancel the obligations made for payment and to recover what had been paid. It is contended by defendant under its eighth proposition that plaintiff only sought a partial cancellation and rescission, and based upon that theory, it argues that no such recovery could be had. As stated, this suit is not of that character and we see no merit in the contention.

It is denied by defendant under its ninth proposition that plaintiff had alleged or proved that he had elected to rescind the purchase of the show case. The testimony shows that plaintiff had his attorney write a letter to defendant on July 27th, 1938, that he was rescinding the contract. The jury found in response to the 16th special issue that plaintiff notified defendant of his intention to rescind the contract within a reasonable time after he discovered the defects in the refrigerator counter. A similar finding under other facts brought out in the testimony was given in response to the

21st special issue. We find evidence in the record to support the verdict in these respects, and the proposition is overruled.

By its tenth proposition defendant contends that in any event the court should have rendered judgment for it upon the notes sued on in its cross action. This proposition, of course, is predicated upon the theory that plaintiff should not have prevailed in the suit. From what we have said, this contention cannot be sustained.

For the reasons assigned, this cause must be reversed and remanded for another trial. But such assignments not herein sustained are expressly overruled. Reversed and remanded.